United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. All right. Thank you. You can be seated. I understand we have a class here from Patrick Henry College. We're glad to have you as well as some students from VCU. You're also welcome. We're glad to have all of you. Mr. Madry, whenever you're ready, we'll be glad to hear from you in the first case. May it please the Court, I'm John Madry, Solicitor General for the State of North Carolina. There's no First Amendment right to practice medicine. It's well established that the states have broad power to license and regulate the professions and that a state may use that regulatory authority in the furtherance of its legitimate interest in promoting respect for life, including the life of the unborn. Additionally, a state's legislation legitimately may be aimed at ensuring that a decision to seek an abortion is mature and informed, even when in so doing, the state expresses a preference for childbirth. That was the statement of the United States Supreme Court in the Casey decision. Here, North Carolina's Women's Right to Know Act requires the provision of truthful, relevant, and real-time information that a woman may choose to receive as part of her decision-making process. As such, it is a legitimate exercise of the state's legislative authority and the policy-making branch, that being the North Carolina General Assembly. I should note that we're here today on a facial challenge to the statute that was enacted that has never gone into effect. And as such, the discussion of potential harms or consequences is necessarily speculative, because the law has never gone into it. Are you bringing the facial challenge simply to the display of real-time images, or are you the appellees challenging the informed consent in 1921-82? There's two different provisions. And what's your understanding of what they're challenging? Is it simply the present and display, the describe and display? Or I don't understand them. Maybe I'm wrong, but I don't understand them to be challenging 1921-82. Your Honor, the complaint, as I recall, was amended to a third time and included multiple claims. The district court ruled solely on the First Amendment issues related to 90-21.85. So that's really all that's before us, isn't it? I believe so, Your Honor. The district court judgment dismissed as moot the due process claims and resolved the vagueness claims by reliance upon agreed-upon clarifying definitions. So I believe the only thing that... I appreciate your answer to that. And if 90-21-82 is not being challenged by your opponents, and so that's not going to be ruled unconstitutional and that is certainly presumably valid. Unquestionably, what you talk about is the state's interest is a legitimate and substantial, even compelling one, but is the state's interest, as you've described it, effectuated by 90-21-82, which requires informed consent and at least 24 hours prior to an abortion the physician must inform the woman by telephone and in person of several facts regarding the abortion and also told about prenatal and child care benefits and the right to review printed materials. And the question is, that seems to me right within the heartland of the Casey decision and what Casey had approved. And if that's concededly valid, why did you need to take this extra step? Your Honor, the legislature in enacting 90-21-85 indicated that that was in furtherance of the process of helping ensure an informed But you've already got an informed consent provision which has been validated by the Supreme Court's decision in Casey and that informed consent apparently not being challenged and that's in 90-21-82. Yes, Your Honor, and certainly the question arises would the decision in Casey set the ceiling for what the state can decide as a matter of policy? And I would maintain that the answer to that question is no, that Casey is not the limit of what a state can do. Okay, I understand it, but you will admit that these provisions go beyond what was issued in Casey. Yes, Your Honor, there's no question that they do. Could I ask what then does 90-21-85 in your view add to 90-21-82? It adds real-time relevant information, the opportunity to have that information should the woman decide to avail herself of that opportunity and it is a requirement of the medical procedure enacted by the General Assembly that that information be provided. But how can it serve that purpose if it is optional, if the patient does not have to watch or hear? Your Honor, it appears to me that mandated disclosures are almost necessarily optional. There's no way to ensure or guarantee that the recipient reads them, understands them, pays attention to them, and that's not a reason to validate the provision of it if it would be of value to some or any recipients. But in the instance that one did not wish to view or hear, one can nevertheless certify to having to making informed consent, which seems somewhat inconsistent, does it not? Your Honor, it requires, as evidence of voluntary consent, acknowledgement of the opportunity to receive that information. It doesn't require acknowledgement of actual receipt of the information, and I think that's the distinction. But if a woman decides to put on blinders and earphones, and you've said the statute gives, affords that option, then the woman has clearly indicated by the decision to wear those blinders that she really doesn't want to receive that information, but yet the physician is compelled to go ahead with a recitation that the patient herself may not wish to receive, or that the physician may not believe is in the interest of the patient to be receiving, isn't that a pretty coercive situation? It could be in certain cases, Your Honor. But I would compare it to the requirement, the recognized requirement that a physician inform a patient of the risks normally associated with a procedure. I'm not aware of any opt-out provision. But it's the manner in which the information is conveyed. I mean, many times informed consent, there's a sign, a form that is signed. It takes place often with the physician seated in one chair and the patient seated in another chair. But in this case, as an adjunct to the informed consent, the patient is lying on the patient table half-clothed or naked and putting blinders and earphones on. And that is not what, that is not the setting that I understand informed consent take place in. It's almost like saying we're going to have informed consent take place in the operating, on the operating table or something. I realize it's not actually the place or time where the operation or the procedure is going to be performed. But that is a very odd setting for informed consent to take place, wouldn't you think? Your Honor, it's a prerequisite to the indication of informed and voluntary consent. The acknowledgement in writing of the patient's voluntary consent doesn't occur during the course of the ultrasound procedure, which as everyone recognizes. But it's part and parcel. It's a prerequisite to it, yes, Your Honor. It's a necessary step under the General Assembly's legislation that it be performed and that the display and described requirements be complied with. But of course we know the performance of the ultrasound has been required previously in different provisions and is not at issue here. But where else in the medical profession is there an analogy to this? Where there's a required provision of information even if the patient doesn't want to receive it? No, where there's a required provision of information on the part of the physician who may not feel it's in the best interest of the patient to receive the information or his own, you know, consistent with his own particular viewpoint, and that's conveyed as a result of a state requirement to a patient lying back half naked. That's not the way these conversations normally take place. I would not disagree with that characterization. I don't believe that invalidates it. There are any number of instances where the state requires physicians to make statements if you want to call it compelled speech, over a patient's objection. What in your view would be the most closely analogous requirement? Well, in terms of a compelled statement or speech by the physician over a patient's objections, I would compare it to the instance where a doctor sees a woman that he suspects has been victimized by spousal abuse, and state statutes require that the doctor report that. I would posit there are instances where the woman does not want that information to be reported. I would further posit there are instances where the doctor might believe it's not in the best interests of that individual that he or she convey that information, but it's required to be conveyed. But isn't that more analogous to the 24-hour information provision about the ultrasound, in that it doesn't necessarily in that the situation does not involve the patient being actively engaged in treatment? Well, yes, Your Honor, I would say that's true, but here the procedure is the ultrasound, which is required irrespective of this legislation. The addition is the display and describe aspect attendant to that mandated ultrasound prior to the abortion. And the question is whether there's a rational relationship between the state's imposition of this requirement and its legitimate goals in helping ensure a mature and informed position. Is there a rational relationship? You mean the compelled speech doesn't even bring into play an intermediate level of speech? Your Honor, we would welcome and encourage the Court's consideration of the discussion in the King case from the 3rd Circuit from last month, as well as the Walsh-Langer case from the 11th Circuit from July, both of which were in the memo of additional authority the appellees filed. The discussion as between those courts as well as the 9th Circuit in pickup and this court in the Moore-King case relate to the appropriate standard of review in professional speech cases and indicate that a rational basis usually applies when there is compelled speech or disclosure. I say that my time is up. Okay. Ms. Reichelman, did I say that right or close enough? May it please the Court, Julie Reichelman for the Plaintiffs. This Court recently held Would you mind? Closer? Yes. Is that better, Your Honor? Yes, thank you. This Court recently held that context is key in assessing compelled speech requirements.  Thank you. Okay. Is this better, Your Honor? Yes. Okay. This Court recently held that context is key in assessing compelled speech requirements and the context here shows why the District Court was correct in finding that this particular law violates the First Amendment. Under this law, in order not to lose their medical licenses, doctors must display and image to every patient seeking an abortion, even if the woman is actively blocking the speech and even if the doctor believes that doing so will harm the patient. You're not challenging I want to return to my earlier. You're not challenging 90-21-82? No, Your Honor. We've never challenged that on substantive grounds. That would be within the parameters of KC? That's correct, Your Honor. Okay. The State says that a woman can avoid harm under the provision that we're challenging by wearing earphones and a blindfold. But nevertheless, the doctor has to continue speaking even though no one is listening or watching and while the woman is in the middle of an ultrasound procedure, on the examination table, partially undressed and then forced her to wait four hours before proceeding with the abortion. As the District Court found, this is not an interaction for consent. It is a perversion of the informed consent process. And it violates the First Amendment because it requires doctors to use their own voice to communicate the State's anti-abortion message to their patients. The State would say that this decision is of such gravity that this particular statute was necessary to impress upon the individual the gravity of the impending choice. Your Honor, the State's interest is certainly substantial here, but what the First Amendment cases make clear is that no matter how compelling the State interest, the State's interest in pursuing an ideology simply cannot outweigh an individual's right not to become the courier for that message. And that's what the Supreme Court held in the Woolley case. So in other words, no matter how strong the interest, you can't force someone else to speak that message for you. There are two possible prongs of kinds of compelled speech at issue here, which you say one would be compelling the position to convey the State's own viewpoint message with respect to preservation of life versus reproductive choice. That would be one instance of a compelled speech. The other possible species of compelled speech would be requiring the physician to convey something that the physician feels decidedly is not in the interest of the patient. And which of those prongs of compelled speech, is it one or the other or both that you rely upon? Which is your stronger argument, or do you embrace both? We embrace both, Your Honor. We rely on all of the speech that's compelled here because, again, as this Court and the Supreme Court has held, context is key to evaluating compelled speech, and it's very important to look at the entirety of the speech that this particular mandate compels. It doesn't just require the doctor to display and describe the ultrasound image. It requires the doctor to do that to a woman who's partially undressed on an examination table in the middle of a medical procedure, even if she's covering her eyes and plugging her ears. The doctor has to continue speaking, and it's that entire package of speech that this Court should evaluate in considering our First Amendment claim, and it's that entire packet of speech. But you're not making the broader argument that a physician or professional can never be compelled to convey information of a certain sort that the physician doesn't want to convey. Because, I mean, a physician is required sometimes in the interest of informed consent to convey information that the physician may not personally wish to convey, and so this is, I want to make sure, you're not making an absolutist argument, are you? Absolutely not, Your Honor. We do not see our challenge here as a challenge to traditional informed consent laws. This law is entirely different from a traditional informed consent law for a number of reasons. It's actually contrary to the history and tradition of informed consent because it doesn't have a waiver exception or  statute, and furthermore, it requires the doctor to keep speaking even if the patient is actively blocking the speech, and that's entirely different from traditional informed consent laws, so a ruling in plaintiff's favor here would not endanger traditional informed consent laws. Now, the State has asked the Court for an absolutist rule. The State tells the Court that a doctor's communications with a patient should get less constitutional protection than commercial speech. The Court should reject this argument because it gives less constitutional value to our communications with our doctors than to commercial advertising. The Court also should reject this argument because it would subject an entire category of speech to no meaningful First Amendment review, something the Supreme Court has recently cautioned against in cases like Stevens and Alvarez. Under the State's proposed rule, courts would have almost no power to review what legislatures could force doctors to say or not say in private exam rooms. In fact, the implication of the State's argument is that as soon as the State attaches the label professional to a regulation of speech, the State can make professionals say almost anything or not say almost anything. And as the Third Circuit recently wrote in the King opinion, which we cited in our 28J letter, rational basis review is simply not sufficient to allow for enough judicial oversight to make sure that legislatures aren't suppressing disfavored ideas in the guise of professional regulation. Now the District Court here applied heightened scrutiny to the speech mandate, and we believe that its decision was correct for at least two reasons. First, as the District Court found, this mandate compels ideological speech. But even if the Court doesn't want to decide the question of whether the speech here is ideological, heightened review is still appropriate for several reasons, because this mandate compels doctors to speak to their patients in a way that distorts the traditional role of a doctor in the medical system. Let me start with the ideological speech point first. The State has candidly admitted its ideological goal here to persuade women to choose childbirth over abortion. But even more specifically, the message that this particular law sends is that a woman who chooses not to look at the display and not to hear the description has made the wrong decision. And this law requires the doctor to communicate that disapproval to the woman in a uniquely intrusive way by forcing the doctor to keep displaying and keep describing even if the woman is actively blocking the speech by wearing a blindfold and earphones. Now, the State admits that sending this message of disapproval is one of its goals. It concedes in its brief that the doctor delivers the message even if the woman has earphones and a blindfold on. And the State says that message is, and I quote, that her fellow citizens speaking through the law of the State are concerned about the decision that she is making. Requiring doctors to engage in this performance is ideological as the District Court rightly concluded. Why would it not be perfectly appropriate for the State to communicate that it is concerned about the decision that is being made when it involves a lie? It would be absolutely appropriate, Your Honor, for the State to communicate that through its own speech. But the State can't require the doctor to communicate that in the doctor's own voice. And again, that's really what the Supreme Court held in Casey. In Casey, it approved an offer of the State's own written materials by the doctor. The analogy to this case would be if in Casey, the statute had required the doctor not just to offer the written materials, but to read them and show the pictures to every woman seeking abortion even if she said no and even if she closed her eyes and covered her ears. And that's absolutely not what the Casey statute required. Furthermore, even putting aside the ideological speech point, heightened review is appropriate here for several reasons. As I mentioned, this law requires the doctor to speak in a way that distorts the doctor's role in the medical system. The Supreme Court has allowed more limited review of speech regulations only in distinct categories and only when doing so is consistent with history and tradition. But as we've argued and as the amicus briefs from ACOG and the AMA show, this law is inconsistent with the history and tradition of informed consent in the medical system. It has no exceptions for waiver or for therapeutic privilege. It requires the doctor to speak even if he thinks that doing so will harm the patient. It requires the doctor to violate medical ethics. And again, it requires the doctor to speak even if the patient is actively blocking the speech by wearing earphones and a blindfold. That is just completely different from a traditional informed consent law. And furthermore, the fact that it requires all of this in the middle of a medical procedure is what makes it so intrusive. For a patient to be forced to block out what the doctor is doing in the middle of a medical procedure can only undermine the patient's safety and is entirely antithetical to the basis of the doctor-patient relationship. Am I correct in understanding you don't object to all of this information being offered to the patient? Absolutely not, Your Honor. We do not object to the other provision of the statute, which in fact has been enforced now for three years. It went into effect in October 2011. We never challenged that part of the statute as to substance. And furthermore, the record in this case shows that the plaintiffs of their own accord and even before the law was enacted. They can require the physician to inform the patient of the availability of the state's speech in pamphlets or something of that nature. Is that correct? Absolutely, Your Honor. And that's what a different part of this law does. And again, that part of the law has been in effect for three years. And plaintiffs have been doing that for the last three years. Could I ask a factual question? The requirement of 90-21-82 also has a display component, does it not? Yes, it does, Your Honor. Subsection E requires the physician or a qualified professional to orally inform the woman at least 24 hours before the abortion that there is a display of real-time view of the unborn child and heart tone monitoring that will be available to her. And that information needs to be communicated individually to each woman. But it's only the availability. That's correct, Your Honor. Not the information itself. The availability of the real-time view and in addition the physician offers the state-printed materials about fetal development to the woman. That's in a separate part of the statute. You're basing your case on First Amendment grounds. You're not veering into any kind of an undue burden analysis, are you? We don't need to touch the undue burden test. That's correct, Your Honor. We have only made a First Amendment claim in this case. There has never been an undue burden claim in this case. I think that draws us into all sorts of subjective judgments about what undue is and what burden is. But your point of view is that the First Amendment precedent in Wooley and our own compelled speech cases is much more cabined. Absolutely, Your Honor. We are making a compelled speech claim under the First Amendment, not an undue burden claim under the First Amendment. Your Honor, there's one other reason why we believe that the speech here deserves heightened scrutiny and the court was correct to apply it. And that's because in Baltimore CPC, this court said the context is crucial to evaluating compelled speech and that context includes the viewpoint of the listener. This law, as the court has pointed out, is uniquely coercive. It forces the doctor to continue speaking even if the woman is speaking. And for that additional reason, because of the viewpoint of the listener, the law merits heightened scrutiny. But Justice Black always thought it was the speech conduct distinction. Does that play in here where if the state is regulating professional conduct, it has a good bit more leeway than where it's regulating professional speech? Yes, Your Honor. There have been cases that have held that there is more leeway to regulate professional conduct. But here the doctor is required to speak. And respectfully, there's no case that suggests that speech can ever be treated as conduct. The cases are all to the contrary. So expressive conduct also receives protection under the First Amendment. But the Supreme Court and this court have never held that speech can be considered conduct. And clearly what's at issue here is speech. And the state has conceded that what this law requires is speech. The district court, after deciding to apply heightened scrutiny, concluded that this law failed that test. And we believe that the district court was also correct in that decision. Under such scrutiny, it's the state's burden to show that the law furthers a substantial state interest and that it does so in a way that's less intrusive on First Amendment rights. Your view is that the state would have a good deal more leeway to regulate commercial speech than professional speech? Well, Your Honor, we... Is that a fair characterization of your argument that commercial speech and compelled commercial speech where you're talking about the safety of a product, of a food product or something of that, that the state has more leeway to regulate that than professional speech? Well, Your Honor, what we're asking is for the doctor's speech here to get at least the same level of scrutiny as commercial speech would get, which would be intermediate scrutiny. There's, of course, a line of cases that says that in the context of advertising, if a disclosure is required, even more limited review is warranted than intermediate scrutiny. So you're saying that if the commercial speech cases adopt an intermediate standard, that professional speech should not be less? Correct, Your Honor. We think that because of the importance of doctors' communications with their patients, that discussions about medical treatment should get at least the same level of scrutiny as commercial speech, whereas the state is arguing that these communications should get even less scrutiny. Really no meaningful review under the First Amendment whatsoever. So to conclude, the district court was right that the state had intermediate scrutiny here for several reasons. First, because it didn't show that this particular mandate actually furthered any of the interests that it asserted. But even if it had made that showing, the district court was right that this law intrudes on far more speech than necessary. The state clearly could have passed a law that didn't require doctors to speak, even if they believed that it would harm their patients, that didn't require doctors to know, that didn't require doctors to speak when the woman was actively blocking the speech by wearing earphones and a blindfold. But that is the law that the state passed, and that law violates the First Amendment. As the district court said, there are many other ways to provide the necessary information to patients without hijacking the provider's voice in the middle of a medical procedure. That's exactly what this law does, and for that reason, it violates the First Amendment guarantee against compelled speech. And we would respectfully request that the court affirm the judgment of the district court, unless the court has any further questions. Thank you. Thank you very much. Ms. Madri has some time reserved. If I may, three points, time permitting. I'd like to start with the discussion in the Third Circuit decision in the King case. Obviously, rendered in September, the district court did not have the opportunity to consider that. Particularly, I would call the court's attention to the discussion of whether to apply intermediate or heightened scrutiny or rational basis review. In the King case, the Third Circuit said, quote, in the context of commercial speech, the Supreme Court has treated compelled disclosures of truthful, factual information as being reviewed under a rational basis review. The Third Circuit distinguished between commercial speech cases that prohibited speech and commercial speech cases that compelled speech. So the first point is, as it applies to this case, King says rational basis review is appropriate and notes that that would be consistent with the Ninth Circuit in Pickup, the Eleventh Circuit in Walsh-Langer, and this court's decision in Moore-King. Even applying... Was the Third Circuit case a commercial speech case? The Third Circuit was a medical, sexual orientation, psychological re-counseling case similar to the statute at issue in the Ninth Circuit case Pickup. And importantly, King applied heightened scrutiny to that and upheld the statute under those standards. So just because they applied heightened scrutiny is not the end of the analysis, and note the compelled speech context as we have in this statute. Number two, as to Casey, Casey required not only the provision of written information pamphlets, but I would call the attention to the specific statutory language which is included in the U.S. Supreme Court appendix, opinion as an appendix, specifically at 505 U.S. pages 902 through 903. The Pennsylvania statute in Casey conditioned informed consent on the physician orally informing the woman of medical risks and probable gestational age as well as the availability of the printed materials. There was a compelled speech component in Casey, under the statute at issue in Casey, and that needs to be factored into the equation because what the court said in Casey was what is at stake is the woman's right to make the ultimate decision not a right to be insulated from all others in doing so. The state has an interest beyond voluntary consent in ensuring that the decision that is being made is mature and informed and that is derivative of the broader state's interest in promoting the respect for life, even the life of the unborn. And remember what Casey said additionally, that the state can do that in legislation. It can further the legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring a decision that is mature and informed even when in so doing the state expresses a preference for So there is an additional state interest at play here beyond that of the informed or voluntary consent. For the reasons stated in our brief and in our reply brief, the state encourages this court, urges this court to reverse the decision of the district court, dissolve the injunction, and declare that the North Carolina General Statute 90-21.85 is not in Let me ask you one final question. Are there other cases in other circuits where this something that is this what's the closest case you have to this in other circuits? Because the King case in the third circuit strikes me as a bit different. And what other state legislatures have been enacting these sorts of statutes and what are the other circuit decisions say about them in your judgment? Your Honor, there is a very similar statute that was enacted by the Texas legislature reviewed by the Fifth Circuit in the Lakey decision that is cited extensively in our brief and then there was What is the status of that at this point? Your Honor, as I understand it Before the Supreme Court, they denied cert? No, Your Honor, no cert petition was reviewed in the Lakey decision. So, I don't think that that is the best of my knowledge. All right, thank you. We'll come down and recouncil and then go into our next case.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Allyson K. Duncan